IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE TAYLOR, | ) | CASE NO. 4:13 CV 1253 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

This is an action by Wayne Taylor under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 12.

[3] ECF # 8.

[4] ECF # 9.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.    The Commissioner's decision**

Taylor, who was 48 years old at the time of the hearing,[11] is a high school graduate who attended some college.[12] His past relevant work was as a painting foreman.[13]

The Administrative Law Judge ("ALJ") found that Taylor had the following severe impairments: degenerative disc disease, right shoulder degenerative joint disease, depressive disorder, and adjustment disorder.[14] After noting that no treating or examining physician found that any of Taylor's impairments were severe, and further noting that no state agency consultant had found the impairments to be severe, the ALJ, after paying particular attention to the elements in Listing § 12.04 for mental impairments, decided that Taylor's relevant

---

[5] ECF # 5.

[6] ECF # 11.

[7] ECF # 18 (Taylor's brief), ECF # 19 (Commissioner's brief).

[8] ECF # 18-1 (Taylor's charts), ECF # 19-1 (Commissioner's charts).

[9] ECF # 17 (Taylor's fact sheet).

[10] ECF # 21.

[11] ECF # 9, Transcript of Proceedings ("Tr.") at 32, 56.

[12] *Id.* at 32.

[13] *Id.* at 19.

[14] *Id.* at 15.

impairments did not meet or equal a listing.[15] The ALJ then made the following finding regarding Taylor's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can lift, carry, push, and pull 10 pounds occasionally but only 5 pounds frequently. He can sit for 6 hours and stand and/or walk for 2 hours in an 8-hour normal workday. He can occasionally stoop, kneel, and climb ramps and stairs but never crouch, crawl, or climb ladders, ropes, or scaffolds. He cannot reach overhead with the dominant right upper extremity. He is limited to simple, routine tasks that do not involve arbitration, negotiations, or confrontation. He cannot direct the work of others or be responsible for the safety or welfare of others. He cannot perform work that requires strict production quotas, piecework, or assembly line work. He can have only occasional interaction with others.[16]

The ALJ decided that this residual functional capacity precluded Taylor from performing his past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Taylor could perform.[18] The ALJ, therefore, found Taylor not under a disability.[19]

---

[15] *Id.* at 15-17.

[16] *Id.* at 17.

[17] *Id.* at 19.

[18] *Id.* at 19-20.

[19] *Id.* at 20-21.

The Appeals Council denied Taylor's request for review of the ALJ's decision.[20] With this denial, the ALJ's decision became the final decision of the Commissioner.[21]

**C.    Issues presented**

Taylor asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. This case presents the following two issues for judicial review:

- The ALJ adopted an RFC for sedentary work. Taylor had surgery on his spine that included laminectomies and fusions at multiple lumbar levels. The ALJ gave great weight to the RFC opinions of two state agency reviewing physicians, both given before the post-surgery diagnosis of possible non-fusion at one level and of the need for fusion of the sacroiliac. Does substantial evidence support the RFC finding?

- The ALJ found that a substantial number of jobs existed nationally that Taylor could perform based on two occupations whose regional numbers were 300 each. One of those occupations fell outside the hypothetical because it required interaction with the public beyond that permitted by the RFC. Does substantial evidence support a finding of jobs existing in substantial numbers based upon 300 jobs regionally in one occupation?

**D.    Disposition**

For the reasons that follow, I conclude that the ALJ's no-disability finding has the support of substantial evidence in part, but does not in other parts. Therefore, the denial of Taylor's application will be affirmed in part and reversed in part as will be more fully set forth below.

---

[20] *Id.* at 1-4.

[21] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. §§ 404.981 and 416.1481.

## Analysis

**A.     Standard of review - substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard – the RFC is not supported by substantial evidence, but the step five finding is not erroneous.**

The ALJ found that Taylor had severe degeneration of the lumbar spine that resulted in major surgery in May of 2010 that included laminectomies and fusions at multiple levels.[25] In October of 2011 Taylor's surgeon diagnosed a possible non-union at one level and the need for additional fusion of the sacroiliac.[26] In the interim Taylor was followed by the surgeon, Paul Pagano, M.D., and several of his physician's assistants. They reported improvement in mobility and reduction in pain, although Taylor remained on prescription narcotic medication.

During this interim between the surgery and the diagnosis of the need for additional surgery, two state agency reviewing physicians opined that Taylor could do light work.[27] Both gave their opinions on relatively new forms that did not expressly request explanation of the limitations opined (unlike the predecessor form SSA-4734-BK), and neither opinion provided any such explanation. These reviewing sources did not have the benefit of the later notes of the treating physician diagnosis possible non-union and the need for additional

---

[25] Tr. at 268-271. An MRI on February 12, 2010 documented the extent of the degeneration. *Id.* at 245-247.

[26] *Id.* at 394.

[27] *Id.* at 62-63 (Dr. McCloud, Oct. 18, 2010) and 77-78 (Dr. Holbrook, Feb. 4, 2011).

fusion. Presumably they had the treatment notes pre-dating their opinions, which included follow ups after surgery.

The ALJ gave these reviewing source opinions great weight,[28] even though the ALJ, without explanation, rejected the limitation to light work and adopted a limitation to sedentary work.[29] Elsewhere in the decision the ALJ acknowledged the May, 2010 surgery[30] but discounted greater limitations from it than those incorporated in the RFC because of reports of improvement in the post-surgery follow up notes.[31] Although the ALJ acknowledged "tenderness" in the sacroiliac joint,[32] he made no reference to the treating physician's diagnosis of possible non-union in one of the lumbar levels or to the need for fusion of the sacroiliac.

The resolution of the first issue turns on whether the references to improvements in the post-surgery follow up notes and the opinions of the state agency reviewing physicians constitute substantial evidence in support of the RFC finding. The Commissioner argues they do, but Taylor contends that in light of the subsequent unchallenged diagnosis of a possible non-union and the need for further fusion by the treating orthopedic surgeon, the matter must be remanded.

---

[28] *Id.* at 19.

[29] *Id.* at 17.

[30] *Id.* at 17-18.

[31] *Id.* at 18.

[32] Id.

In particular, the key question here is whether substantial evidence supports the ALJ's residual functional capacity determination when that finding did not include – either directly or indirectly – the medical finding of Taylor's treating surgeon in October, 2011.[33]

The 2011 diagnosis and prognosis made by Taylor's treating orthopedic surgeon was in the record before the ALJ, but that diagnosis and prognosis was not directly addressed by the ALJ. Rather, the ALJ, in discussing the foundation for the RFC, stated as a "fact" that "the further out the claimant was from his back surgery [a lumbar laminectomy and fusion in May 2010], the more the claimant admitted he had improved, especially with the help of physical therapy, pain medications, injections and muscle relaxants."[34] The ALJ found further support for the RFC in the opinions of two state agency medical consultants – to which the ALJ assigned "great weight" – but which were given prior to the medical findings in October 2011.

That medical report from Dr. Pagano was created when Taylor appeared for a follow-up visit six months after he was last seen in June 2011.[35] The report records that Taylor felt his pain improved after an injection, and that he was able to ambulate in an upright position, but also noted that an x-ray showed that the previous fusion at L4-5 may have failed.[36] Taylor, who told Dr. Pagano that he had no insurance, was instructed by

---

[33] ECF # 18 at 12.

[34] Tr. at 18.

[35] *Id.* at 394.

[36] *Id.*

-8-

Dr. Pagano to "give us a call when he is ready to have the hardware [from the prior surgery] removed and his fusion explored." [37] Taylor was given "another script ... for meds until he gets into pain management," and informed that the potentially failed fusion will be examined at the same time the hardware is removed and additional surgery is done.[38] Consistent with the comment concerning Taylor's lack of insurance coverage, Dr. Pagano's note here states that "[w]e are waiting for his disability so we can get him on a schedule to take out his hardware, explore his fusion and at the same time perform an SI arthrodesis."[39]

In sum, this June report stands in contrast to Dr. Pagano's note from Taylor's visit in October, described above. In June the observations were that Taylor was doing "very well postoperatively," and that x-rays showed a fusion "that appears solid from L1 through L5."[40] Taylor was given an injection for pain and told to come back in four months.[41]

This is clear evidence of a change in the surgical outcome, though not necessarily evidence of any different physical functional limitations. But because the physical functional limitation opinions relied on by the ALJ were given based on a different surgical outcome, it cannot be said that those opinions provide substantial evidence for the RFC adopted here. In that regard, it is especially troubling, given the great weight attributed to the reviewing

---

[37] *Id.*

[38] *Id.* That additional surgery – "an SI arthrodesis" – is another procedure to achieve fusion of the sacroiliac joint.

[39] *Id.* at 394.

[40] *Id.* at 395.

[41] *Id.*

source opinions, that the ALJ did not at least address the fact that those opinions did not consider the changed diagnosis and prognosis of the treating physician. At the very least, the purported "fact" stated by the ALJ – that the further out from surgery, the greater Taylor was improving – must be re-examined in light of the treating physician's record showing that the surgery had failed and that additional surgery was needed.

Specifically, the Sixth Circuit has recently re-affirmed the basic rubric that the "chief" responsibility of an ALJ in regards to assessing the medical evidence as part of a disability determination is to consider "all" such evidence in the record.[42] *Gentry v. Commissioner of Social Security* is clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record – *i.e.*, "cherry-picking" it – to avoid analyzing all the relevant evidence.[43] This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability.[44]

---

[42] *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citations omitted).

[43] *Id.* at 724 (citations omitted).

[44] *Id.* at 729 (citations omitted); *Grubbs v. Comm'r of Soc. Sec.*, No. 12-14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

Accordingly, as noted above, the matter here must be remanded on this issue.

That said, I finally observe with the Commissioner that there is no minimum number of jobs that must be identified by a VE at step five as a basis for the ALJ finding that a significant number of jobs exists for the claimant.[45] In this respect, there is no error in the decision of the ALJ.

## Conclusion

For the reasons stated, substantial evidence does not support in part the finding of the Commissioner that Taylor had no disability, while in other parts the decision is proper. Accordingly, the decision of the Commissioner denying Taylor disability insurance benefits is affirmed in part and reversed in part, and so remanded for additional proceedings in conformity with this opinion.

IT IS SO ORDERED.

Dated: May 8, 2014          s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

---

[45] ECF # 19 at 8-9 (citing cases).